**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHANIE CORRAL, NICOLE POTENZO, LISA WADDELL, and STEPHANIE HANSEN, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| | ) | No. 1:23-CV-01603 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Edmond E. Chang |
| POOH BAH ENTERPRISES, INC., RICK'S CABARET CHICAGO, RCI HOSPITALITY HOLDINGS, INC., ERIC LANGAN, SHAUN KEVLIN, LOU SWEILEM, BRETT POLULAK, GRACE KIM, URSELA TAKAHASHI, and CHAD DAVIS | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

While Stephanie Corral, Nicole Potenzo, Lisa Waddell, and Stephanie Hansen worked as dancers at Rick's Cabaret, an adult-entertainment club, they allegedly were assaulted and battered by customers during nearly every single shift that they worked. R. 34, Am. Compl. ¶ 1.[1] The dancers allege that customers regularly choked, bit, groped, slapped, and licked them. *Id.* ¶ 26. And they claim that after they reported these assaults to the club's management, management took no actions to intervene, allowed the customers to stay in the club, and at times even blamed the

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

dancers for the attacks. *Id.* ¶¶ 28–30, 34. Corral, Potenzo, Waddell, and Hansen also allege that club management—despite knowing that dancers were frequently being assaulted by customers—failed to take any preemptive actions to prevent future attacks. *Id.* ¶¶ 38–48. Those failures included a lack of assault-reporting policies, a failure to tell customers to not touch the dancers, and a failure to train dancers on what to do if they were assaulted. *Id.* Finally, Waddell and Corral state that they were both fired from the club because of their age and because the club prefers having younger dancers. *Id.* ¶¶ 107–24.

Based on these allegations, Corral, Potenzo, Waddell, and Hansen brought this lawsuit against several club managers and the corporate owners of the club.[2] *See generally* Am. Compl. The dancers allege that the corporate Defendants violated Title VII of the Civil Rights Act of 1964, the Illinois Human Rights Act (IHRA), and the Biometric Information Privacy Act. *Id.* at 19–22, 30–31. They also assert that all of the Defendants violated the Illinois Gender Violence Act (IGVA) and the Illinois Dram Shop Act, intentionally inflicted emotional distress on the Plaintiffs, and were willfully and wantonly negligent. *Id.* at 22–28. Finally, Corral and Waddell allege that the corporate Defendants violated the Age Discrimination in Employment Act (ADEA). *Id.* at 29.

The Defendants move to dismiss, arguing that the Plaintiffs fail to state claims for relief. R. 38, Defs.' Mot to Dismiss. Specifically, the Defendants argue that several

---

[2] The Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 and exercises supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

of the Plaintiffs' claims are plead with insufficient specificity, that the claims are time barred, that the IGVA does not apply to corporate entities, that the IHRA preempts the Plaintiffs' common law claims, and that the Defendants are not liable under the IHRA or Title VII because customers were the ones committing the assaults. *Id.* The Defendants are correct that the IGVA applies only against natural persons, but the rest of their arguments fail. So the motion to dismiss is largely denied. The IGVA claim is dismissed as to the corporate Defendants, but all of the other claims survive.

The Defendants also move for the Court to enter a protective order on class discovery. R. 48, Defs' Mot. for Protective Order. They point to employment contracts that the Plaintiffs signed that contained class-action waivers, and they argue that these waivers preclude the Plaintiffs from bringing class-action claims. *Id.* at 3–4. But the Defendants' arguments fail because the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (EFAA) invalidates the class-action waivers with regard to Potenzo and Corral, and the Illinois Workplace Transparency Act (IWTA) voids the class-action waivers with respect to Waddell and Hansen. The Plaintiffs are thus free to bring class-action claims, and the Defendants' motion to preclude class discovery is denied.

## I. Background

The Court accepts all well-pleaded factual allegations in the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Stephanie Corral, Nicole Potenzo, Lisa Waddell, and Stephanie Hansen worked as dancers at Rick's Cabaret, an adult-entertainment club, until they

were all fired in 2022. Am. Compl. ¶¶ 10–13. They allege that during almost every shift that they worked at the club, they were assaulted and battered by customers. *Id.* ¶ 25. Corral, Potenzo, Waddell, and Hansen claim that customers groped their breasts, buttocks, and genitals, pulled down their underwear, slapped them, bit them, choked them, and pulled their hair. *Id.* ¶ 26. The dancers say that the club fostered an environment where sexual assaults and batteries like these were normalized and tolerated. *Id.* ¶ 28. And they claim that many of these incidents occurred in the view of managers and bouncers, but the managers and bouncers did nothing to stop or respond to the attacks. *Id.* ¶ 29. Plus, customers were almost never kicked out of the club for assaulting the dancers. *Id.* ¶ 30.

For instance, a customer grabbed Potenzo's buttocks when she was not looking. Am. Compl. ¶ 31. But when Potenzo reported the incident to the club's general manager, Lou Sweilem, he told her that he would not kick the customer out because he had already spent $15,000 at the club that night. *Id.* On another occasion, when Corral was dancing for a customer, the customer put his hands around her neck and choked her. *Id.* ¶ 51. Corral was visibly shaken by the incident and reported it to a floor manager, Brett Polulak. *Id.* ¶ 52. But Polulak did nothing in response. *Id.* And when Corral also reported the incident to Shaun Kevlin, a club-operations manager, Kevlin actually blamed Corral for the attack and again did nothing to the customer, allowing him to stay in the club. *Id.* Similarly, a customer also attacked Hansen when she was dancing, choking her to the point of her almost losing consciousness. *Id.* ¶ 59. Though the club's management had cameras in the area where this occurred and

4

though Hansen reported the incident, managers did nothing and did not kick the customer out. *Id.* As a final example, a customer tried to pull down Potenzo's underwear and insert his fingers into her vagina. *Id.* ¶ 60. Once she told him to stop, the customer bit her on the neck and shoulder, leaving the areas bruised. *Id.* After Potenzo reported the incident to managers Chad Davis and Ursela Takahashi, neither of them took action and instead just told Potenzo to stay away from that customer. *Id.* The dancers allege that they suffered severe physical, psychological, and emotional harm due to the repeated attacks and the environment in the club. *Id.* ¶ 69.

In addition to the club's management's failure to intervene and respond to attacks, the dancers allege that management failed to take any preemptive actions to stop the attacks, despite knowing that they were occurring almost every day. Am. Compl. ¶¶ 37–48. Although management knew that attacks were more common in the "VIP rooms" at the club, they rarely stationed bouncers outside those rooms. *Id.* ¶ 62. Also, there were no signs or other communication to customers instructing that inappropriate and non-consensual touching was not allowed. *Id.* ¶ 42. Plus, there were no formal or established procedures for dancers to report incidents of customer sexual misconduct to management, and there was no training for dancers on what to do if they were assaulted by customers. *Id.* ¶¶ 39–40.

Separately, Corral and Waddell allege that the club discriminated against them because of their age. *Id.* ¶ 107. They claim that the club made concerted efforts to hire and retain dancers who are younger than 30 and that the club disproportionately fired older dancers. *Id.* ¶ 110. Specifically, Corral and Waddell both assert that

they were fired because of their age (they were both over 40 years old when they were fired). *Id.* ¶¶ 108–09, 122. In February 2022, Waddell was dancing with her back to a customer, and when she turned around, he had pulled out his penis. *Id.* ¶ 34. Waddell reported the incident to the club's management. *Id.* But the managers allowed the customer to stay in the club and then fired Waddell. *Id.* Waddell claims that her firing was illegitimate and was actually motivated by age discrimination. *Id.* ¶¶ 119, 122.

Next, in April 2022, one of the club's managers told Corral that the bikini bottom she was wearing during her shift provided insufficient coverage and thus did not comply with the club's policies. *Id.* ¶ 112. This was despite younger dancers wearing even more revealing bikini bottoms during that shift. *Id.* ¶ 114. Corral then changed into compliant bottoms, but nonetheless, the club's manager fired her for non-compliance. *Id.* ¶ 118. Corral says that this stated reason for the firing was merely pretext and that the real reason was that she was one of the oldest dancers in the club. *Id.* ¶ 122. Both Corral and Waddell note that they were qualified dancers at the times of their terminations and that they received favorable feedback from customers throughout their time working at the club. *Id.* ¶ 121.

Based on all of these incidents, Corral, Potenzo, Waddell, and Hansen brought this class-action lawsuit against several of the club's managers and the corporate entities that own the club. Am. Compl. The dancers allege that the corporate Defendants violated Title VII, the Biometric Information Privacy Act, and the Illinois Human Rights Act. *Id.* at 19–22, 30–31. They also assert that all of the Defendants violated

6

the Illinois Gender Violence Act and the Illinois Dram Shop Act, intentionally inflicted emotional distress on the Plaintiffs, and were willfully and wantonly negligent. *Id.* at 22–28. Finally, Corral and Waddell allege that the corporate Defendants violated the ADEA. *Id.* at 29. The Defendants now move to dismiss, arguing that the Plaintiffs fail to state claims for relief. Defs.' Mot. to Dismiss. Additionally, the Defendants move for the Court to enter a protective order against any class discovery, contending that the Plaintiffs all signed waivers that preclude them from bringing class-action claims. Defs.' Mot. for Protective Order at 3–4.

## II. Motion to Dismiss

### A. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### B. Specificity of Pleadings

The Defendants begin by arguing that the Complaint should be dismissed because it makes allegations against the Defendants together as a group, rather than individually identifying which Defendants were responsible for which specific alleged actions. Defs.' Mot. to Dismiss at 4–5. This argument asks too much of the Plaintiffs at the pleading stage and thus fails. Under Rule 8, the Complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up). The Plaintiffs' Complaint does so. By referring to the club's management as a group, the Complaint makes clear that the managers and corporate owners of the club together failed to protect the Plaintiffs from assaults and batteries by customers. *See, e.g.,* Am. Compl. ¶¶ 28, 34, 38. The Complaint need not separately identify which Defendant was responsible for each alleged infraction because the Complaint alleges that the managers *all* failed to take appropriate action. Thus, the Complaint does enough to give the managers and corporate entities fair

8

notice of the Plaintiffs' claim that they failed to create a safe workplace for dancers, failed to institute policies to prevent attacks, and failed to take proper action once they were notified of attacks occurring. At this pleading stage, that is enough.

Indeed, the Complaint *does* provide specifics as to which Defendants failed to act when made aware of attacks. For example, the Complaint states that when Corral was choked by a customer, she reported the incident to managers Brett Polulak and Shaun Kevlin, and they both failed to take action. Am. Compl. ¶¶ 51–52. Similarly, when Potenzo was bitten by a customer, she reported that incident to managers Chad Davis and Ursela Takahashi, who also took no action and proceeded to allow the customer to stay in club. *Id.* ¶ 60. These allegations identify precisely which managers the dancers reported attacks to and clearly state that these managers failed to take appropriate action. That provides more than fair notice to the individual Defendants about the nature of the Plaintiffs' claims against them. The Defendants' first argument thus fails.

### C. Time Bar

Next, the Defendants argue that the claims should be dismissed because the Plaintiffs did not bring them in time. Defs.' Mot. to Dismiss at 6–7. The Defendants contend that the Plaintiffs were required to file EEOC charges within 300 days of the alleged assaults occurring but that they failed to do so. *Id.*. This argument fails as well. The Complaint notes that Corral, Waddell, Potenzo, and Hansen were assaulted and battered during almost every one of their shifts throughout the time they worked at the club. Am. Compl. ¶ 25. The Plaintiffs were all terminated at various points in

2022, and all of them brought EEOC charges within 300 days of their terminations. *Id.* ¶¶ 10–13; Defs.' Mot. to Dismiss at 7. Thus, fewer than 300 days passed between the end of the alleged assaults and the filing of EEOC charges.

And it does not matter that some of the assaults happened outside of the 300-day window. When a hostile work environment claim is based on a series of separate actions, those actions come together to constitute one continuing "unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). So as long as one of the alleged actions in the series occurred fewer than 300 days before filing the EEOC charge, the entire claim is timely. *Isaacs v. Hill's Pet Nutrition, Inc.*, 485 F.3d 383, 385 (7th Cir. 2007). Here, the Plaintiffs were assaulted up until they were fired from the club, and they filed their EEOC charges well within 300 days of their terminations, so their claims based on these assaults are timely. Am. Compl. ¶¶ 10–13, 25; Defs.' Mot. to Dismiss at 7.

### D. Title VII and IHRA

The Defendants then contend that the Plaintiffs fail to properly state claims under Title VII and IHRA for hostile work environment because customers, not the Defendants themselves or club employees, were the ones committing the alleged assaults. Defs.' Mot. to Dismiss at 8–11. This argument misstates the standard for adequately alleging a hostile work environment claim.

An employer can be liable under Title VII and the IHRA if they know about hostile working conditions and sexual harassment but do not take reasonable actions to address those problems. *Dunn v. Washington Cnty. Hosp.*, 429 F.3d 689, 691 (7th

10

Cir. 2005). And "it makes no difference whether the person whose acts are complained of is an employee, an independent contractor, or for that matter a customer." *Id.* "[A] person can be subject to liability for harm resulting from his conduct if he is negligent or reckless in permitting, or failing to prevent, negligent or other tortious conduct by persons, which are not his servants or agents, upon premises or with instrumentalities under his control." *Id.* (cleaned up). Under these standards, the Defendants can be liable here for customers' assaults if they failed to take proper actions in response to those assaults.

And the Plaintiffs meet these standards, properly alleging that the Defendants failed to take reasonable actions to prevent the dancers from being assaulted, despite knowing that these attacks were happening during almost every shift. Am. Compl. ¶¶ 1–3. Specifically, the Plaintiffs state that they reported numerous incidents of customers non-consensually groping their breasts, buttocks, and genitals, slapping them, biting them, and choking them. *Id.* ¶ 26. Yet when they were told about these attacks, managers merely ignored the reports, allowed the customers to stay in the club, and at times, blamed the dancers for the incidents. *Id.* ¶¶ 29–30, 34. Plus, the Plaintiffs allege that the club took no preemptive actions to prevent assaults from occurring. The club's management did not post signs telling customers to not engage in non-consensual touching; they did not place bouncers outside of VIP rooms; and they had no reporting procedures or training for dancers who were assaulted. *Id.* ¶¶ 37–48, 62. These allegations set forth that the Defendants knew about customers' repeated unlawful actions, yet took no actions at all to protect the Plaintiffs and other

11

dancers. So the Plaintiffs adequately state Title VII and IHRA hostile work environment claims.

### E. Gender Violence Act—Corporate Defendants

Moving on to the Plaintiffs' claim under the Illinois Gender Violence Act, the Defendants assert that this claim should be dismissed as to the corporate Defendants because the IGVA applies only to natural persons. Defs.' Mot. to Dismiss at 12. That is correct—the IGVA does not apply to corporate entities.

The IGVA provides that "[a]ny person who has been subjected to gender-related violence … may bring a civil action … against a person or persons perpetrating that gender-related violence." 740 Ill. Comp. Stat. 82/10. For the purposes of the statute, "'perpetrating' means either *personally* committing the gender-related violence or *personally* encouraging or assisting the gender-related violence." *Id* (emphases added). The statute's use of the word "personally" to describe what it means to perpetrate prohibited violence suggests that the Act applies only to natural persons. But the Plaintiffs point to the Illinois Appellate Court's decision in *Gasic v. Marquette Management, Inc.,* 146 N.E.3d 10 (Ill. App. Ct. 2019), in which the court explained that "under some circumstances, a legal entity, such as a corporation, can act 'personally'" within the meaning of the IGVA. *Id.* at 14. True, if the Illinois Supreme Court has not yet spoken on an issue (as is the case here), the Court should follow the Illinois Appellate Court's decisions on state law issues, unless there is "compelling reason to doubt" that the appellate court has "stated the law correctly." *AAR Aircraft & Engine Grp., Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001). But here, there *is*

12

a compelling reason to doubt that the appellate court got it right.

The Illinois Supreme Court has explained that the "plain and ordinary meaning of the term 'person' is an individual human being." *People v. Christopherson*, 899 N.E.2d 257, 260 (Ill. 2008) (cleaned up). And in Illinois, "the general rule is that absent a statutory definition that expands the meaning of person, that terms refers to an individual, not a legal entity." *Fayfar v. CF Mgmt.-IL, LLC*, 2012 WL 6062663, at *1 (N.D. Ill. Nov. 4, 2012) (citing *People v. Christopherson*, 879 N.E.2d 1035, 1037 (Ill. App. Ct. 2007), *aff'd*, 899 N.E.2d 257, 260 (Ill. 2008)). The IGVA does not contain a statutory definition that expands the meaning of person to also include corporations or legal entities. So the Illinois Supreme Court's default rule applies, and the correct interpretation of the IGVA is that it applies liability only to natural persons, not to corporations. *See Mundo v. City of Chicago*, 2021 WL 3367160, at *5 (N.D. Ill. Aug. 3, 2021). Thus, the Plaintiffs' IGVA claim is dismissed as to the corporate Defendants.

### F. IHRA Preemption

The Defendants' next argument is that the Plaintiffs' common law claims for intentional infliction of emotional distress and willful and wanton negligence are preempted by the Illinois Human Rights Act. Defs.' Mot. to Dismiss at 12–13. That is incorrect; there is no preemption here.

To determine whether a claim is preempted by the IHRA, Illinois courts use the "inextricably linked" test. That is, if a plaintiff's civil rights claim is "inextricably linked" to a civil rights violation as defined in the IHRA "such that there is no *independent basis* for imposing liability apart from the Act itself," then that claim "must

be litigated before the Commission—and only before the Commission." *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 22 (Ill. 1997) (cleaned up) (emphasis added). Inextricable linkage in Illinois case law depends on whether a claim is invoking the "legal duties" created by the Human Rights Act or can instead be established through an "independent" basis. *Id.* at 22–23. So the real question is whether a plaintiff can state a claim without—either explicitly or implicitly—having to call upon the IHRA to support it.

In this case, the Plaintiffs can state claims for intentional infliction of emotional distress and willful and wanton negligence without having to call upon the IHRA. To state an intentional infliction of emotional distress claim, the Plaintiffs must allege that: (1) the conduct involved was truly extreme and outrageous; (2) the actor either intended that his conduct inflict severe emotional distress or knew that there was at least a high probability that his conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). The Plaintiffs allege each of these elements without reference to the IHRA. They allege that the Defendants knew that the Plaintiffs were being attacked on a near-daily basis by customers, yet the Defendants continued to require the Plaintiffs to work in such conditions and knowingly refused to take action to address the ongoing problem of customer assaults. Am. Compl. ¶¶ 25–30. Put another way, if there were no such thing as the Illinois Human Rights Act, this sort of outrageous treatment by an employer as to its employees would still state an emotional-distress claim under common law. So the Plaintiffs state an intentional

14

infliction of emotional distress claim without having to invoke the legal duties or other elements of the IHRA.

The same goes for the claim for willful and wanton negligence. The elements of that claim are that there was a duty owed to the Plaintiffs by the Defendants, that the Defendants breached that duty, that the Plaintiffs were injured, and that the Defendants' breach of duty, or negligence, was the proximate cause of their injuries. *Martin v. McDonald's Corp.*, 572 N.E.2d 1073, 1076 (Ill. App. Ct. 1991). Here, even without the Illinois Human Rights Act, the Plaintiffs have adequately alleged that the Defendants had an independent duty to take reasonable actions to protect their workers—the dancers—from being physically and sexually assaulted during their shifts. Yet the Defendants took no steps to protect them, and in fact tolerated or even encouraged customers' assaults by refusing to kick customers out and by sometimes blaming dancers for the attacks. Am. Compl. ¶¶ 25–30. The Defendants also negligently failed to implement policies or procedures to report assaults, failed to put bouncers in place to protect the dancers, and failed to tell customers to not touch the dancers. *Id.* ¶¶ 37–48, 62. The Plaintiffs thus need not rely on the legal duties established by the IHRA to state a claim for willful and wanton negligence here. Neither the Plaintiffs' emotional-distress claim nor their negligence claim is inextricably tied to the IHRA. So neither claim is preempted.

### G. Illinois Dram Shop Act

Continuing on, the Defendants next argue that the Plaintiffs' Illinois Dram Shop Act claim should be dismissed because it is not stated with sufficient

15

particularity. Defs.' Mot. to Dismiss at 14–15. This too fails because it asks too much of the Plaintiffs at the pleading stage.

The Illinois Dram Shop Act provides that "[e]very person who is injured within this State, in person or property, by any intoxicated person has a right of action in his or her own name, severally or jointly, against any person, licensed under the laws of this State or of any other state to sell alcoholic liquor, who, by selling or giving alcoholic liquor, within or without the territorial limits of this State, causes the intoxication of such person." 235 ILCS 5/6-21. The Complaint asserts that the club regularly overserved customers, that several attacks committed against the dancers were done by customers who the Defendants had overserved and who were visibly intoxicated, and that the Defendants knew that customers who had been overserved were likely to attack the dancers. Am. Compl. ¶¶ 184–89. So put simply, the Plaintiffs allege that the serious attacks that they endured—including being choked, bitten, and groped—were committed by customers who were visibly intoxicated and had been overserved by the Defendants. At the pleading stage, these allegations are enough to state a claim under the Dram Shop Act. There is no need for the Plaintiffs to provide details on precisely which attacks were committed by overserved customers and which customers were overserved. That information may be uncovered during discovery. The motion to dismiss is denied as to Dram Shop Act claim.

## H. Age Discrimination

Finally, Waddell and Corral properly state claims for age discrimination under the Age Discrimination in Employment Act, despite the Defendants' arguments to

the contrary. Defs.' Mot. to Dismiss at 15–18. By contending that Corral and Waddell fail to establish a prima facie case of age discrimination under the *McDonnell Douglas* burden-shifting framework, the Defendants again try to hold them to a higher standard than is required at the pleading stage. "The prima facie case under *McDonnell Douglas* … is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). So "an employment discrimination complaint need not include such facts and instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 508 (quoting Fed. R. Civ. P. 8(a)(2)). Corral and Waddell meet this lower standard, and their claims survive the motion to dismiss.

The ADEA makes it unlawful for an employer "to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The statute's protections apply only to employees who are at least 40 years old. *Id.* § 631(a). Corral and Waddell allege that they were both at least 40 years old when they were fired from the club and that the club fired both of them because of their age. Am. Compl. ¶¶ 108–09, 122. Specifically, they state that Corral's firing for violating the clothing policy and Waddell's firing for reporting inappropriate behavior by a customer were both pretextual and were really because the club does not want to have older dancers. *Id.* They also claim that the club disproportionately fires older dancers, that younger dancers were treated better than Corral and Waddell, and that at the time of their firings, Corral and Waddell

17

were qualified dancers who received positive feedback on their performance from customers. *Id.* ¶¶ 110, 121. These allegations more than adequately state a claim for age discrimination and show that Corral and Waddell are entitled to relief under the ADEA. They need not provide any additional evidence or specificity at this stage. So the motion to dismiss is also denied with respect to the ADEA claims.

### III. Class Discovery

Separate from their motion to dismiss, the Defendants also move for the Court to enter a protective order against class discovery. Defs.' Mot. for Protective Order. The Defendants note that when Corral, Potenzo, Waddell, and Hansen began working at the club, they signed contracts called "Entertainment License Agreements." *Id.* at 3–4; R. 48-1, Mazzoccoli Decl. ¶¶ 3–4. Those contracts all contained an arbitration section, requiring all disputes to be resolved through binding arbitration. *See e.g.*, R. 48-2, Corral Contract at 6–8. And within that arbitration section, the contracts contained a class and collective action waiver. *Id.* The waiver stated:

> The parties understand and acknowledge that by signing this agreement they specifically waive any right to participation in any class action or collective action as against the other party and if at any time licensee is deemed a member of any class created by any court, arbitrator or any other tribunal, she will 'opt out' of such class at the first opportunity, and should any third party pursue any claims on her behalf licensee shall waive her rights to any monetary recovery.

*Id.* at 8. The Defendants cite this waiver and argue that it precludes the Plaintiffs from bringing class-action claims against them. Defs.' Mot. for Protective Order at 3–4. Thus, the Defendants contend that the Court should bar class discovery. *Id.*

18

The Defendants' argument that class discovery should be barred fails for two reasons. First, as the Plaintiffs correctly note, the federal Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (EFAA) invalidates the class-action waivers in Potenzo and Corral's contracts. Second, the Illinois Workplace Transparency Act (IWTA) voids the class-action waivers in Waddell and Hansen's contracts. So all four named plaintiffs remain free to bring class-action claims, and the motion to preclude class discovery is thus denied.

Starting with the EFAA, this federal law invalidates arbitration agreements and class-action waivers as to claims for sexual harassment or sexual assault:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). This Act applies to any dispute or claim that arises or accrues on or after its effective date—March 3, 2022. *See* Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022).

Out of the four named plaintiffs, Potenzo and Corral's sexual-harassment claims accrued after March 3, 2022. They both allege that they were assaulted by customers during almost every shift that they worked. Am. Compl. ¶ 25. So that means that the assaults continued until Potenzo was fired on December 6, 2022, and Corral was fired on April 5, 2022. *Id.* ¶¶ 10–11. And as explained above, it does not

matter that the assaults *began* before March 2022. What matters is the end date because the incidents all come together to constitute one continuing "unlawful employment practice." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117. Because Potenzo and Corral continued to be assaulted after March 3, 2022, both of their claims accrued after that date. The EFAA thus applies to their claims, invalidating the "predispute joint-action waiver" that they signed in the ELA contracts. That undermines the Defendants' argument that the class-action waivers are enforceable and prevent the Plaintiffs from bringing class-action claims.

Plus, the EFAA applies to *all* of Potenzo and Corral's class-action claims, not just their sexual harassment and hostile work environment claims. The Act states that no "predispute joint-action waiver shall be valid or enforceable with respect to *a case* which is filed under Federal, Tribal, or State law and *relates to the sexual assault dispute or the sexual harassment dispute*." 9 U.S.C. § 402(a) (emphasis added). Thus, the class-action waivers here are void with respect to any claim that relates to sexual harassment or assault. The Plaintiffs bring their claims under Title VII, IHRA, IGVA, intentional infliction of emotional distress, willful and wanton negligence, and Illinois Dram Shop Act as class-action claims. *See* Am. Compl. And each and every one of those claims relates to the customers' sexual assaults of the Plaintiffs. Thus, no class-action waiver is enforceable with respect to any of these claims. Potenzo and Corral are free to pursue their class-action claims.

That leaves Hansen and Waddell. Their class-action waivers are also invalidated, this time by the IWTA. That Act broadly invalidates waivers of employment-law rights:

> "any … waiver that is a unilateral condition of employment … and requires the employee or prospective employee to waive, arbitrate, or otherwise diminish any existing or future claim, right, or benefit related to an unlawful employment practice to which the employee or prospective employee would otherwise be entitled under any provision of State or federal law, is against public policy, void to the extent it denies an employee or prospective employee a substantive or procedural right or remedy related to alleged unlawful employment practices, and severable from an otherwise valid and enforceable contract under this Act."

820 ILCS 96/1-25. Thus, if Hansen and Waddell's class-action waivers, which were conditions of employment, "waive … or otherwise diminish any existing or future claim, right, or benefit," then they are "void to the extent [they] den[y] … a substantive or procedural right or remedy." *Id.* That standard is satisfied.

Under Federal Rule of Civil Procedure 23, the Plaintiffs have a federal right to bring a class-action lawsuit. And the Entertainment Licensing Agreement required Hansen and Waddell to waive that procedural right. *See e.g.,* R. 48-3, Hansen Contract at 8. So under the plain language of the IWTA, the class-action waivers that Hansen and Waddell signed are against Illinois public policy and thus are void. Plus, Hansen and Waddell signed their contracts on May 8, 2021, and June 12, 2021, respectively, which was after the IWTA's effective date of January 1, 2020. R. 52-17, Hansen Updated Contract at 9; R. 52-18, Waddell Updated Contract at 9; 820 ILCS

21

96/1-25. Hansen and Waddell, like Corral and Potenzo, are free to pursue their claims as class actions. The motion to preclude class discovery is thus denied.

## IV. Conclusion

The Defendants' motion to dismiss, R. 38, is denied in large part and granted in limited part. The Illinois Gender Violence Act claim is dismissed as to the corporate Defendants, but all of the other claims survive the motion to dismiss. The Defendants' motion for entry of a protective order on class discovery, R. 48, is denied. The parties shall proceed to class discovery on the claims for Title VII, IHRA sexual harassment, IGVA (only against the non-corporate Defendants), intentional infliction of emotional distress, willful and wanton negligence, and Illinois Dram Shop Act claims. The discovery shall cover the merits of the individual Plaintiffs' clams and the propriety of class certification for the class claims. The parties shall proceed to individual discovery on the ADEA, IHRA age discrimination, and BIPA claims.

ENTERED:

_s/Edmond E. Chang_
Honorable Edmond E. Chang
United States District Judge

DATE: August 11, 2025

22